AO 91 (Rev. 11/11)  Criminal Complaint (approved by AUSA Sarah Wolfe)

# UNITED STATES DISTRICT COURT
для the
Eastern District of Pennsylvania

| United States of America | ) |
|---|---|
| v. | ) |
| John Murray Rowe, Jr. | ) Case No. 21-mj-1884 |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **May 8, 2020** in the county of **Philadelphia** in the **Eastern** District of **Pennsylvania**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 794(a) | On or about May 8, 2020, in the Eastern District of Pennsylvania, JOHN MURRAY ROWE, JR. knowingly and willfully attempted to communicate, deliver, and transmit to a foreign government, to wit the Government of the Russian Federation and representatives, officers, and agents thereof, both directly and indirectly, classified information relating to the national defense of the United States, with intent and reason to believe that said information would be used to the injury of the United States and to the advantage of a foreign nation, in violation of 18 U.S.C. § 794(a). |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

s/ George Edward Stevenson, Jr.
*Complainant's signature*

George Edward Stevenson, Jr., Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/14/2021

s/ Hon. Marilyn Heffley
*Judge's signature*

City and state: Philadelphia, PA

The Hon. Marilyn Heffley U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

JOHN MURRAY ROWE, JR.

Case No. 21-mj-1884

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## A CRIMINAL COMPLAINT AND ARREST WARRANT

I, **George Edward Stevenson, Jr.**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is submitted in support of a Criminal Complaint and Arrest Warrant against JOHN MURRAY ROWE, JR. As set forth below, there is probable cause to believe that on or about May 8, 2020, JOHN MURRAY ROWE, JR. knowingly and willfully attempted to communicate, deliver, and transmit to a foreign government, to wit the Government of the Russian Federation and representatives, officers, and agents thereof, both directly and indirectly, classified information relating to the national defense of the United States, specifically, information classified at the SECRET level, with intent and reason to believe that said information would be used to the injury of the United States and to the advantage of a foreign nation, in violation of 18 U.S.C. § 794(a).

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since September 2017. I am currently assigned to the FBI's Philadelphia Field Office counterintelligence squad where my duties include, among other things, the investigation of espionage and foreign intelligence activities against the United States Government and

Intelligence Community, as well as counter-proliferation violations. I also serve as a member of the FBI Philadelphia, Special Weapons and Tactics (SWAT) team, where my duties include high risk warrant service, urban and rural fugitive searches, specialized surveillance, and tactical site surveys. I have provided support to other squads throughout the Philadelphia Field Office, including the counterterrorism, white collar, and cyber squads. I have successfully completed the Counterintelligence Operations Course at the FBI Academy in Quantico, VA, where I was exposed to a variety of counterintelligence techniques, cases, and exercises. Prior to beginning my career with the FBI, I served for five years as a Surface Warfare Officer in the United States Navy, where I learned and practiced the procedures for properly handling classified material.

3.  As a federal agent, I am authorized to investigate violations of the United States and to execute warrants issued under authority of the United States.

4.  This affidavit is based on my personal knowledge and information obtained from documents, counterintelligence investigators, other law enforcement officials and witnesses. Since this affidavit is being submitted for the limited purpose of establishing probable cause in support of a complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation.

**BACKGROUND ON CLASSIFIED INFORMATION
AND THE UNITED STATES AIR FORCE**

5.  Classified information is defined by Executive Order ("E.O.") 13526, and relevant preceding Executive Orders, as information in any form that: (1) is owned by, produced by or for, or under the control of the United States government; (2) falls within one or more of the categories set forth in E.O. 13526; and (3) is classified by an original classification authority

who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

6. Under E.O. 13526, classified information can be "TOP SECRET," "SECRET" or "CONFIDENTIAL." The designation "TOP SECRET" applies to information that, if disclosed without proper authorization, reasonably could be expected to cause exceptionally grave damage to national security. The designation "SECRET" applies to information that, if disclosed without proper authorization, reasonably could be expected to cause serious damage to national security. The designation "CONFIDENTIAL" applies to information that, if disclosed without proper authorization, reasonably could be expected to cause damage to national security. Access to classified information at any level may be further restricted through Sensitive Compartmented Information ("SCI") categories. Only individuals with the appropriate security clearance and additional SCI clearance(s) have access to such classified information.

7. Pursuant to E.O. 13526, a person may gain access to classified information only if a United States agency head or agency head's designee has determined that the person is eligible to access classified information, the person has signed an approved nondisclosure agreement, and the person has a "need-to-know" the classified information. "Need-to-know" means that an authorized holder of classified information has determined that a person requires access to specific classified information in order to perform, or assist in, a lawful and authorized government function.

8. The United States Air Force ("USAF") is a military branch of the United States Department of Defense ("DoD") that provides offensive and defensive air operations. Among USAF's core missions is Air and Space Superiority, which includes establishing and maintaining control of the skies over conflict areas, allowing United States forces to operate at the times and

places of their choosing. USAF systems also provide direct support to ground forces, particularly in helping to identify and destroy time-critical targets.

## RELEVANT STATUTE

9.      Under 18 U.S.C. § 794(a), "[w]hoever, with intent or reason to believe that it is to be used to the injury of the United States or to the advantage of a foreign nation, . . . attempts to communicate, deliver, or transmit, to any foreign government, . . . or to any representative, officer, agent, employee, subject, or citizen thereof, either directly or indirectly, any . . . information relating to the national defense, shall be punished . . . by imprisonment for any term of years or for life . . . ."

## PROBABLE CAUSE

**Defendant's Background and Employment History**

10.     JOHN MURRAY ROWE, JR. ("ROWE") is a U.S. citizen who was born in Wooster, Massachusetts, and graduated from the University of Massachusetts Lowell in the early 1980's with a Bachelor of Science in Engineering Technology.  From approximately 1980 to 2018, ROWE was employed as a test engineer for multiple companies.  The majority of these companies were cleared defense contractors ("CDCs") that had been granted a facility security clearance by the DoD to access, receive, or store classified information for the purpose of bidding for a contract or conducting activities in support of DoD programs.  Accordingly, during the course of his employment with CDCs, ROWE held various security clearances from SECRET to TOP SECRET//SCI.  Because ROWE held such security clearances, the United States government entrusted him with access to sensitive government materials, including classified documents and materials, and information relating to the national defense that was closely held by the government ("national defense information" or "NDI").

11. ROWE obtained his first security clearance at the TOP SECRET//SCI level in 2004, when he began working for U.S. COMPANY-1, a CDC, in its Space and Intelligence Systems division on matters involving the development and manufacturing of electronic systems. In connection with that clearance, on October 27, 2004, ROWE signed an SCI nondisclosure agreement ("Form 4414"), which states:

> I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government department or agency (hereinafter Department or Agency) that last authorized my access to SCI. I understand that it is my responsibility to consult with appropriate management authorities in the Department or Agency that last authorized my access to SCI, whether or not I am still employed by or associated with that Department or Agency or a contractor thereof, in order to ensure that I know whether information or material within my knowledge or control that I have reason to believe might be SCI, or related to or derived from SCI, is considered by such Department or Agency to be SCI. I further understand that I am obligated by law and regulation not to disclose any classified information or material in an unauthorized fashion.

12. At no time did U.S. COMPANY-1 authorize ROWE to disclose classified or national defense information to any unauthorized persons or to declassify any classified information. On February 15, 2005, after ROWE had completed his contract with U.S. COMPANY-1, he signed the same nondisclosure form acknowledging his ongoing obligations to protect classified information.

13. Several jobs later, in 2007, he began working for another CDC, U.S. COMPANY-2, on matters involving similar electronic systems and software. In connection with that employment, ROWE maintained a TOP SECRET//SCI clearance and signed another SCI nondisclosure agreement on April 2, 2007, which contained the same language as set forth above in paragraph 11. At no time did U.S. COMPANY-2 authorize ROWE to disclose classified

5

information to any unauthorized persons or to declassify any classified information. When his employment with U.S. COMPANY-2 ended in October 2007, ROWE's access to TOP SECRET//SCI information ended, and he was again instructed that he had an ongoing obligation to protect classified information.

14. In November 2015, ROWE began employment with U.S. COMPANY-3, another CDC, on matters involving the USAF's electronic warfare technology. In connection with this employment, ROWE held a SECRET security clearance and had access to classified NDI. Accordingly, on November 17, 2015, ROWE signed a Classified Information Nondisclosure Agreement ("Form 312") that stated, in pertinent part:

> I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause damage or irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge classified information to anyone unless (a) I have officially verified that the recipient has been properly authorized by the United States Government to receive it; or (b) I have been given prior written notice of authorization from the United States Government …
> …
> … I have been advised that any unauthorized disclosure of classified information by me may constitute a violation, or violations, of United States criminal laws, including the provisions of Sections 641, 793, 794…
> …
> …I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to classified information, and at all times thereafter.

15. In mid-April 2017, a U.S. COMPANY-3 Facility Security Officer ("FSO") expressed concern to the Defense Security Service ("DSS")[1] that ROWE may be an insider

---

[1] The DSS, which was reorganized and renamed in 2019 as the Defense Counterintelligence and Security Agency, is a security agency within DoD that is responsible for, among other things, vetting personnel within the federal and defense contractor workforce; protecting critical

threat to U.S. COMPANY-3, based on review of ROWE's online profile and posts on a social media platform ("WEBSITE-1"). For example, the FSO informed DSS that in one of ROWE's social media posts, ROWE stated that he had revealed information regarding U.S. military fighter jets, which he knew he was prohibited from disclosing, to a woman he thought might be a Russian spy. Shortly thereafter, on August 15, 2017, ROWE's contract with U.S. COMPANY-3 ended.

16. In October 2017, ROWE began employment with U.S. COMPANY-4, another CDC, on matters involving the USAF's aerospace technology. In connection with this employment, ROWE maintained a SECRET clearance and, on November 2, 2017, he signed another nondisclosure agreement, which contained the same language as set forth above in paragraph 14.

17. On or about February 20, 2018, ROWE attempted to bring a thumb drive into a classified space within U.S. COMPANY-4's facility, in violation of U.S. COMPANY-4's security regulations. However, he was stopped by a fellow employee who observed him carrying the thumb drive. When questioned by the employee, ROWE stated that he was attempting to install software from the thumb drive onto a computer in the classified space, which would violate security measures and, thus, was not permitted.

18. On or about February 28, 2018, during a conversation with a U.S. COMPANY-4 Information Security Officer, ROWE inquired about the possibility of simultaneously holding a U.S. security clearance and a Russian security clearance. ROWE was informed that would

---

technology and classified programs; counterintelligence support; and security training, education, and certification for U.S. government agencies and CDCs.

violate security measures and, thus, was not permitted. In or about March 2018, U.S. COMPANY-4 terminated ROWE's employment based on his multiple security violations.

**The FBI Undercover Operation**

19. Based on ROWE's conduct, FBI began an undercover operation to determine ROWE's willingness to communicate classified information to a foreign government.

20. On or about March 9, 2020, in Lead, South Dakota, ROWE was approached in person by an FBI employee operating in a covert capacity ("UCE-1") and posing as an agent of the Russian government. After a brief discussion, ROWE agreed to meet UCE-1 at a nearby hotel in Deadwood, South Dakota to discuss employment opportunities.

21. During the meeting at the hotel (the "March Meeting"), UCE-1 explained that she was an agent of the Russian government and that her government was interested in ROWE's knowledge of sensitive information belonging to the United States government. In response, ROWE explained his interest in moving to Russia and providing information to the Russian government. Specifically, ROWE and UCE-1 had the following exchange:

UCE-1: [Based on] what you are telling me, . . . I can already see that we will be definitely interested in [your] services and consultancy.

ROWE: Okay, yeah. . . . I'd be interested too, but, you know, it's kind of like . . . we gotta do this over time and the thing is, is I've gotta distance myself. Like for example, . . . my clearance will . . . become inactive . . . the end of this month. Now . . . I don't have to answer to the [U.S.] government. [I] can go where I want. [A]fter that I can . . . For . . . my whole life I . . . wasn't even allowed to go to Canada without first getting permission. . . . I had to ask permission because I had a . . . security clearance. And definitely Russia's off [the table], right?

UCE-1: M-hum.

ROWE: But, I've always been interested, especially the last couple years. Seeing--going to Moscow, and St. Petersburg.

8

> UCE-1:  M-hum.
>
> ROWE:  And, you know, like I said, at the end of this month, . . . once that, uh, the clearance becomes . . . inactive, that means I don't answer to the government no more, uh, I can go where I want.
>
> UCE-1:  So, Russian government, us--
>
> ROWE:  Yeah.
>
> UCE-1:  --we can take you, no clearance, and we can definitely compensate you for your time and experience.
>
> ROWE:  Yeah. . . . It sounds, it sound like a plan. Okay. [laughs]

22.  During the March Meeting, ROWE told UCE-1 that he had been wanting to work for the Russians:

> ROWE:  I've been saying this to people. I said, "I'm gonna go work for the Russians." I've been saying that for the last two years.
>
> UCE-1:  And we-we've-we heard you--
>
> ROWE:  Then you show up. [laughs]
>
> UCE-1:  --we heard you. That's why I'm here.
>
> ROWE:  Yeah.

23.  During the March Meeting, ROWE made multiple disclosures of classified NDI to UCE-1 concerning the USAF.

24.  Following the March Meeting, ROWE began communicating via email with another FBI employee ("UCE-2") located in Philadelphia, Pennsylvania, who was posing as the same Russian agent. From March 2020 to November 2020, ROWE exchanged over 300 emails with UCE-2, confirming his willingness to work for the Russian government, discussing his knowledge of classified NDI, demonstrating his awareness of proper classified information security protocols, and explaining his use of tradecraft to conceal his relationship with the purported Russian agent.

9

25. For example, in an email dated April 9, 2020, ROWE told UCE-2, "I have 40 years experience working in defense company labs, I'm hoping I can help."

26. Additionally, in an email dated April 9, 2020, ROWE complained to UCE-2 about having lost his security clearance, stating:

> Without a Active Secret clearance you can not work on classified projects, so I been without a job the past year...Understand why I'm being careful what I say. Anyway, I kind of look at the situation like this. If I can't get a job here then I'll go work for the other team. I wanted you to be aware that the US government was watching me as far as having contact with women from foreign country.

27. In an email dated April 17, 2020, ROWE explained to UCE-2 that his experience in the aerospace industry would help Russia:

> I work on Digital Channelizer Receivers. I actually help pioneer this technology 20 years ago. Today it is actually the heart of the ECM [electronic countermeasure] (Radar Jammers) used in the US jet fighters. All my work over the last 40 years has been the development of Radar Jammers in the lab as a Test Engineer. I'm not sure if you guys this same technology but I would assume you would.

28. In an email dated April 30, 2020, ROWE described to UCE-2 his concealment efforts and his intentions to relocate to Russia:

> I deleted the [prior] E-mails [with UCE-2] to protect myself in case these E-mails got into the wrong hands...I figure this virus things is going be around for a very long time and politically something else is going to happen. Everyone here is talking about a new world order and I believe this so much that I even been asking my granddaughters to learn the Russian language , it a hard language to learn. I saw that Putin sign into law in which a foreigner can become Russian citizen without giving up their own citizenship. This is important to me because I can live on my social security that I received here while living in Moscow. I been seeing how much it cost to live there and that the place to be. Once this travel ban is over, I'm going to be heading to Moscow...my phone number is [] if you don't have it. I been pretty open telling people about moving to Russia BUT I have never told anyone about you!!!!

29. On May 8, 2020, ROWE wrote an email to UCE-2 in Philadelphia, PA in which he disclosed classified NDI concerning specific operating details of the electronic

10

countermeasure systems used by U.S. military fighter jets. A subject matter expert within the USAF has confirmed that the information disclosed by ROWE was classified at the SECRET level, meaning its unauthorized disclosure reasonably could be expected to cause serious damage to national security. Representatives from U.S. COMPANY-3 advised that, while working at U.S. COMPANY-3, ROWE had a "need-to-know" and access to classified information concerning the electronic countermeasure systems used by U.S. military fighter jets.

30. On July 31, 2020, ROWE sent an email to UCE-2, reaffirming his willingness to work for the Russian government and explaining his fear of detection by the United States:

> If you have any real work that needs to get done, I'm willing to do it. You have to understand that after what happen to me with the Dept. of Defense stalking me on [WEBSITE-1] back in 2017, I have to be real careful on who I talk too. That why I was asking about your passport. I don't know if your one of those [members of a political party] trying to lure me back to Philly. Get me in stink operation with the FBI, talking in a hotel room about trade secrets. Those people are real dirt bags.

31. On August 4, 2020, ROWE sent an email to UCE-2, admitting his prior improper disclosure of classified information to a foreign national:

> That girl from Denmark [name] that help build that house in Alabama , she used to live right here in Lead. That whole situation happen over 10 YEARS ago…She was very anti-American and very Pro-Communism , she kept on asking me why we have won the cold war, the Soviet Union was a better nation. I kind of like to let that whole crazy thing that happen back then slip into the past. That why I don't like talking about it , because I DID tell her some classified stuff back then !!!!

32. On August 5, 2020, ROWE sent an email to UCE-2, expressing his desire to move to Russia:

> I think your my only hope of getting to Russia before the bottom drop out here in the United States…I wanted to open bank account in Russia but I need your help doing so.

11

33. On September 10, 2020, ROWE had a second in-person meeting with UCE-1 in Deadwood, South Dakota (the "September Meeting"). During this meeting, ROWE made multiple disclosures of classified NDI to UCE-1 concerning the USAF.

34. Following the September Meeting, ROWE continued to exchange numerous emails with UCE-2 (who was located in Philadelphia, Pennsylvania). In these emails, ROWE discussed, among other topics, his plan to travel from his home in Lead, South Dakota to the Eastern District of Pennsylvania to meet in person with UCE-2 and other purported Russian government agents in furtherance of his desire to work for the Russian government.

35. On September 13, 2020, ROWE sent an email to UCE-2 with a link to a residence located in Philadelphia, Pennsylvania, stating, "I figure I could work right out of here , what do you think ???"

36. On September 20, 2020, ROWE sent an email to UCE-2, explaining his concealment efforts during his impending travel:

> When I leave the Black hills, I won't have access to my E-mail. The only source of communication will be thru my WIFI phone. I gave you that number !!!!
>
> I disguise the phone so it doesn't look like a phone, it kind of looks like some type of foot wear.

37. On October 2, 2020, ROWE sent an email to UCE-2, confirming his plan to travel to Philadelphia, Pennsylvania:

> How things over there in Bustleton [Northeast Philadelphia]?. I plan on traveling over within the first or second week of Nov. after the election. I'll be getting a place to stay on the fly , so my location is kept a secret[.]

38. On November 5, 2020, ROWE sent an email to UCE-2, stating:

> I like that [residence located in the Philadelphia area], I'm going to book a room there. Hopefully I'll get there on time, I'm still looking for those classified documents I have laying around here somewhere. … Reading the stuff on RT

news [a Russian media outlet], it looks like the rest of the world is ready to get rid of the United State government and their phony money.

39. On November 11, 2020, ROWE sent an email to UCE-2, advising that he had found classified documents to share with UCE-2: "I did find those classified documents that I took from [U.S. COMPANY-2] and [a U.S. Agency] that you requested[.]"

40. Based on the above facts, I submit that there is probable cause to believe that ROWE attempted to communicate national defense information to the Russian government, with intent or reason to believe that it would advantage that foreign nation, when he emailed classified NDI to UCE-2 under the belief that UCE-2 was a Russian agent, in violation of Title 18, United States Code, Section 794(a).

       s/ George Edward Stevenson, Jr.
George Edward Stevenson, Jr., Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me on   December 14  , 2021

 s/ Honorable Marilyn Heffley
THE HONORABLE MARILYN HEFFLEY
United States Magistrate Judge
Eastern District of Pennsylvania

13